Thank you. May it please the court. My name is Eitan Kasteljanic and I am representing Travis Coleman. Good morning. Good morning. Good morning to all of you. Coleman has degenerative disc disease of the lumbar and cervical spine and he also has a pain disorder, depression, and insomnia. He required cervical spine surgery in May of 2015 but unfortunately he has never recovered the ability to perform any type of full-time competitive work. The ALJ aired here by improperly rejecting numerous medical opinions including the opinions of two treating physicians, Dr. Foster and Dr. Jackson, two treating nurse practitioners, Ms. Schwarzkopf and Ms. Kass. You know, I would like you to since we don't have a lot of time. I know that there is a lot of conflicting medical testimony but the elephant in the room somewhat is your brief argues that there's no evidence of malingering in the record but you admit that Coleman exhibited drug-seeking behavior and the ALJ seemed to discount your client because of that and there is testimony from nurses that Coleman exaggerated his limitations and pain during the emergency room visits. There was also evidence of like he had huge amounts of pills that he'd been prescribed. Why isn't that a sufficient basis to find that there was evidence of malingering here? So it seems to me central a lot of it is the ALJ discounted your client basically for drug-seeking behavior and malingering or whatever. So if that's the case that's kind of a lens if that's supported that's a lens that kind of directs us on everything else. So can you address that? Sure, malingering is a very strong term and it's because and that's part of why the ALJ nowhere in her decision does she even use that word. In fact nowhere in the record is that word used anywhere by any of the physicians or anybody who treated him and so yes there were this is a large file and there was some concerns that he appeared to show exaggerated symptoms but all of that is balanced out or completely undermined so to speak or overmined by the fact that he ultimately was found to have cervical spinal stenosis that required surgery. So it's a little bit odd to say that somebody who actually was in such bad shape that he required spinal surgery was exaggerating his pain complaints. Apparently the surgeon didn't think so. Not only did the surgeon not think so but Dr. Foster his treating physician didn't think so, Dr. Jackson, I mean all of the treatment providers and so if we didn't have five four treatment providers a examining psychologist Dr. Schneider and a medical expert Dr. Linsenmeier who responded to interrogatories by stating that he believed Coleman meets Osteen. We didn't have all of that then I think your concerns would be they would be much strong you know that would make more sense or and once again wasn't the ALJ's concerns because the ALJ never stated malingering. But ALJ was concerned about drug seeking behavior. Okay I would like to address that as well. There's an interesting conundrum here when you if you have a condition that causes pain if you seek medication for the pain then you're drug seeking. If you don't seek medication for the pain then you're exaggerating your complaints about pain because if your pain was so bad why aren't you seeking medication. So in this case it fell on the other way. His pain was so bad that he was seeking pain medication throughout the record and he was providing he was prescribed it and the thing is if you were abusing the pain medication the doctors will figure this out and they will cut you off. I'm sure you've seen other files other cases where that is exactly what has occurred that has not occurred here. He was an alert in the system and one said something like 800 pills had been prescribed over a short period of time and then he had his emergency room visits and that type of thing and they refused to give him pain medication because they came exactly to that conclusion because I think there was it was 800 and maybe there's another one 600 or I don't know it's a huge amount of pills. Yes I think that early on he was you know there's there's evidence that supports exactly what you're saying but as when you look at the longitudinal record here that was before they had diagnosed him with the cervical spine injury that required surgery and that's one of the odd things here is we've got a treating neurosurgeon who found that he had retrolysis thesis in his spine cervical spine requiring surgery. We've got several other opinions from treatment providers that agreed with that. We've got a medical expert who testified through interrogatories that he felt that that was present and then we've got the government arguing that that's not the case and we have the ALJ also not accepting that diagnosis. The other thing that I guess is and that I think relates to what you're asking about the drug seeking. Mr. excuse me Kolnick has been prescribed all these medications he's been diagnosed by several providers with a chronic pain disorder and that is an impairment that the ALJ refused to accept and then she rejected some of the medical opinions because they were based in part on the diagnosis of chronic pain disorder. Did your excuse me did your client ever seek a non-drug treatment to relieve his pain physical therapy etc? I can't respond to that immediately so I'll try to respond to that and rebuttal. He did obviously having cervical spine surgery is about the highest level of treatment you're ever going to find here in such a case. If you don't have any more questions right now I would like to reserve some time for rebuttal. Is that okay? Do my colleagues want to ask anything right now? Okay that would be fine. We'll give you three minutes for rebuttal then. Thank you. Thank you. All right I believe we have I show Sarah Moome. Yes good morning. Good morning. Can you state your appearance for the record? Yes may it please the court. My name is Sarah Moome here representing the commissioners. So Coleman alleges he became disabled in November 2013 after either a dentist or a co-worker attacked him. His story has varied which he says aggravated his spinal impairment and though Coleman did undergo a cervical fusion imaging has uniformly indicated only mild cervical and lumbar findings and as you just discussed with Mr. Janich the ALJ expressed concerns about malingering and drug seeking. Did the ALJ actually make an affirmative finding of malingering so as to justify exclusion of Coleman's testimony? If not are we free to infer malingering from other evidence in the record or what is your interpretation of the record on that? So the ALJ you're correct and opposing counsel is correct but the ALJ never specifically said Coleman is malingering but under Carmichael under a footnote in Carmichael and I'm afraid I don't have that exact site in front of me the main circuit doesn't require that the ALJ make a specific finding of malingering and I'm unaware of precedent requiring that there be a physician diagnosis of malingering in the record. So what is required is the ALJ point to affirmative evidence of malingering. If there's not a finding of malingering then can we infer malingering or what clear and convincing reasons did the ALJ give from your perspective for rejecting Coleman's testimony or was it rejected or was it discounted or how do you interpret the record? So I would say that you can infer malingering from the three pieces of evidence that I discussed in the brief specifically the Waddell signs with overreaction the inconsistencies on exam including grip strength inconsistencies and the inconsistencies in the emergency room when he said when Coleman said he can't open his right hand and then the attending party noted that shortly thereafter he began using his hand talking animatedly with opening it moving it around when he said he couldn't. So I would say that you can rely on those three pieces of evidence the ALJ cited to infer malingering and then find that the ALJ did not need to provide any additional reasons but even if the court doesn't want to rely on malingering that's okay because the ALJ provided additional reasoning and first I would say that those pieces of evidence of malingering that I already pointed to are themselves a clear and to reject for the ALJ to discount or reject the Coleman's subjective symptom complaints. Under Thomas a failure to give consistent effort is a valid reason and entertainment attention exaggeration on examination is also a reason. But then as discussed as you discussed with Mr. Yonich the ALJ also found drug seeking behavior and there is substantial evidence of that in the record beginning as early as December 2013 when Coleman sought Vicodin for rib pain but didn't have tenderness on examination when palpated with the stethoscope when he went into the emergency room for neck pain and was declined because of the ED alert showing a lot of scheduled drugs and became very aggressive and then returned the very next day alleging neck pain but moving his neck freely when looking around the room when he fired Dr. Foster with very strong language because he was denied extra pain medication. So it's not and it's not as as opposing counsel suggests a situation in which the claimant is simply experiencing such significant pain and is seeking pain medication to address it but it's also paired with the problem that there are the inconsistencies on examination that we've just discussed. So he's seeking pain medication but when doing so he is making complaints that are not consistent with the findings on examination and with his behavior. So those two things paired together are very strong evidence that Coleman's subjective complaints are not reliable. And then finally I have a question. Let's say this is Judge Gilman. You know the I note that the ALJ noted the inconsistencies with the medical record in discounting Coleman's treating physicians but did the ALJ consider the other factors set forth in the 20 code of federal regulation 404.1527 and those factors are some things like length of treatment relationship, frequency of examination, the consistency of the physician's opinion, specialization of the treating position. Is there any evidence on the record that the ALJ considered any of those other factors set forth in that regulation? If you will give me a moment I am turning to the ALJ's decision now. I mean I'm sorry you can you tell me which regulation you were citing again? Yes 404.1527C. Okay okay so I would know on page 24 the ALJ acknowledged that he considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and with 416.927 the corollary regulation for title 16. And I haven't yet gone through the ALJ's decision to see if he discussed each of those factors individually with regard to each individual opinion but I would I would note that there isn't I'm not aware of any ninth circuit requirements that the ALJ expressly discussed each of those factors although the ALJ is required to consider them. I'm not aware of any language requiring him the ALJ to discuss every single one of them. So is it your argument then that the ALJ acknowledged those sections of awareness? My argument is I'm sorry for interrupting. I know it's hard you don't have internet is that you can't zoom in here or you don't have any? I'm located with the agency's VPN. Oh okay yeah it's easier if in the future if you can get in on zoom it works a lot better because then we we don't talk on top of each other but I and since your agency has a number of cases that let's uh that being said so is your argument that the fact that the ALJ acknowledged those sections means the ALJ knows what's required and but doesn't have to say everyone but the ALJ incorporated that into the uh the analysis or what are you saying? Yes that is my argument. My argument is that the ALJ acknowledged the requirements of the regulation of 20 CFR 404 1527 and the corollary 16 or title 16 regulation. Acknowledged that he considered the opinion evidence in accordance with those requirements and then discussed the opinion evidence. So while the ALJ may not have discussed excuse me each of the individual factors with regard to each of the individual opinions there's no requirement that he did so and of course I as I noted previously I haven't gone through each of the individual opinions to see if all of those factors were discussed with each one of them but regardless of whether or not they were the ALJ's acknowledgement of the regulation is sufficient an acknowledgement that he considered the opinion in accordance with the regulation. Just a minute Paula what do you think justifies the ALJ discounting all of the the treating physicians opinions Foster and Jackson and the two nurses what justifies that in this case? So I would say that the ALJ gave reasons for each individual opinion that we could go through and I'm happy to address any questions on each that each of those individual providers did not. The ALJ saw all of the emergency room records saw all of the indications of inconsistent behavior on examination saw all of the indications of drug seeking behavior and so had a whole view look at the record and was able to substantiate the decision with substantial evidence and because the ALJ's determination was rational it should be affirmed. So unless there are any okay yes let me just ask you a quick question did the ALJ expressly make a finding that Dr. Foster's opinion was contradicted by other physicians if not why didn't the ALJ err in discounting Dr. Foster's testimony? So once again turning to the ALJ's decision I don't see that the ALJ specifically said that Dr. Foster's opinion was contradicted by other opinions but in the Ninth Circuit I don't believe there is any requirement that the ALJ expressly state whether or not the opinion was contradicted and here we know it was contradicted because of the state physician opinions regardless of whether or not it was contradicted however the ALJ provided reasons that would satisfy either the clear or convincing standard or the lower specific and legitimate standard to reject Dr. Foster's opinion including inconsistencies with the objective evidence with the examinations and with drug seeking behavior. All right do either of my colleagues have any additional questions of Ms. Moon? Okay apparently they do not so we'll go back to you Mr. Janich and you have three minutes. Thank you. First I want to respond first to Judge Hawkins. In the record there's numerous treatment notes that refer to his attempts at physical therapy in the past these can be found at 463, 472, 627, 640, 695, 750. More recently on 858 in the transcript he was prescribed six weeks of physical therapy and that was at 858 and at 865 it's reported that the physical therapy actually caused increased pain. So yes there is evidence of his attempts to treat with physical therapy. Thank you. With regard to the findings that theoretically could have supported a finding of malingering one of them is not even clear that's the one with the POSS wobble signs which looks like possible but it's but it might be positive I think POSS sounds more like possible but we can't really tell that's not real clear evidence. And but let's just assume for the sake of argument that that he was at the beginning of this case inappropriately drug seeking or he was you know we can't tell you can't we can't measure I can't hear and you can't sit there and and determine what kind of what level of pain he was in. If you're in extreme pain there was one point he he noted he went to the hospital they gave him Dilaudid which is a very strong painkiller which is not prescribed I don't think you have to go to the hospital to get it and it worked really well for him and he said that's great can I get a prescription for this and of course they couldn't. When you're desperate and in a lot of pain and it's only when the neurosurgeon saw that the MRI supported his pain complaints and supported the need for surgery that I think that's the flipping point that really confirmed why everyone all the doctors here were correct. ALJ what it boils down to here is it the it's the medical evidence it's the medical opinions. Well let me ask you let me let's put it this way okay there's a saying that you know trial judges do what they do because they're there we do what we do because we're not there. So obviously it's different and any of us that have been in the trial court know it's different when you actually look at people and you make credibility determinations and you you know and you resolve that. There's no doubt in this record that there are conflicts and inconsistencies and there's a lot of evidence to go through. So what is your best argument and that's what trial judges do or ALJs do or whatever is they what is your best argument that the ALJ made a mistake that's not permissible and that it wasn't just resolving inconsistencies evaluating credibility and doing all of that. What's your best argument? Well I think the best argument involves the medical evidence because the medical evidence is compelling it's uncomplicated everybody agreed but with regard to what you're. No are you it isn't uncontradicted though that's not true there are some different views there are different things in there there does require some resolution so give me your best assume that there are some inconsistencies what's your best argument that the ALJ erred? Well with regard to the the testimony the issue that you just brought up which and the ALJ gets to sit in that room well the UCA but I can look at the person and listen to them testify. One of the things that you will find in this file throughout the file are references from doctors who are seeing him for the first time and note that he's peculiar unusual the psychologist who did the most thorough evaluation of that issue suspected that there may be some sort of as a bit odd and in because of that I think it's more important to rely on what the medical professionals including a licensed psychologist have to say about his behaviors than to rely on what an ALJ sees in an in a one-hour hearing. That I think is the the more important aspect how do you evaluate that? But okay William I've taken you over so why don't you wrap up in 30 seconds. Okay I think once again I've already said it but it's the issue here is we've even got a medical expert that was sent interrogatories by the judge and who came back and said he needs a listing and didn't have any question about it he said it was on an ongoing basis so she held the second hearing brings in another medical expert even he said that that that Coleman couldn't have was sub-sedentary for at least a year and after that he didn't have an opinion he couldn't tell. This is part of why I've only requested remand for a new hearing here rather than an award of benefits because there are obviously some doubts that should be fully evaluated and his chronic pain was never evaluated at all and that has to be part of the picture but I think the evidence here actually supports the finding that he's met the listing the entire time or at least he's been sub-sedentary the entire time. All right thank you both for your argument this matter will stand submitted. Thank you.
judges: Gilman, Hawkins, Callahan